UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
AMEER LAWSON,

               Petitioner,                      <u>MEMORANDUM AND ORDER</u>

    - against -                            04-CV-2345 (RRM)

M. P. McGINNIS,
Superintendent, Southport Correctional Facility,

               Respondent.
---------------------------------------------------------X

ROSLYNN R. MAUSKOPF, United States District Judge.

      Pending before this Court is petitioner Ameer Lawson's *pro se* petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner seeks relief from his February 24, 1998

conviction in the New York State Supreme Court, Queens County, for murder in the second

degree under New York Penal Law ("N.Y.P.L.") § 125.25(2), and criminal possession of a

weapon in the second degree under N.Y.P.L. § 265.03.  (Am. Habeas Pet. (Doc. No. 23) at 2.)

He was sentenced to concurrent terms of twenty-five years to life for the murder conviction, and

seven-and-a-half years to fifteen years for the weapon conviction.  (*Id.*)  As grounds for his

petition, Lawson asserts:  (1) the trial court's ruling on the reverse-*Batson* challenge was

erroneous; (2) ineffective assistance of appellate counsel for not arguing the evidence was

insufficient to support a conviction of depraved indifference murder; (3) ineffective assistance of

appellate counsel for not arguing ineffective assistance of trial counsel based on trial counsel's

failure to preserve the insufficiency of the evidence claim; and (4) insufficient evidence to

support a depraved indifference murder conviction.  (*Id.* at 7–8.)

      For the reasons set forth below, the petition is DENIED in its entirety.

**BACKGROUND**

I.   **New York State Criminal Proceedings**

  A. **Jury Selection**

The jury selection process took place over the course of three days in January 1998. (*See* Tr. (Doc. No. 44) at 26–378.)  In the first round of jury selection, defense counsel exercised two peremptory strikes against a Hispanic female and a white male. (Tr. 117.)  In the second round, defense counsel exercised two peremptory strikes against a white male and a white female. (Tr. 179.)  In the third round, after defense counsel exercised a peremptory strike against Mr. Cullado, a white male, the prosecutor raised a reverse-*Batson* challenge.[1]  (Tr. 240.)  However, defense counsel withdrew the peremptory strike before the prosecutor could state her reasons for making the challenge. (Tr. 240.)  Defense counsel then exercised another peremptory strike in the third round against Mr. Vallejo, a white male. (Tr. 240.)  In response, the prosecutor renewed the reverse-*Batson* challenge and alleged a pattern of racial discrimination, pointing out that defense counsel's first round peremptory strikes were against a "Hispanic Caucasian" and a "white male," and the second round peremptory strikes were against "a male white and . . . a female white." (Tr. 240–41.)  The trial court held that the prosecutor had not established "any pattern here." (Tr. 241.)

Later in the third round, defense counsel exercised another peremptory strike against Ms. Dibernardo, a white female. (Tr. 243.)  The prosecutor yet again renewed the reverse-*Batson* challenge, arguing that defense counsel's last two peremptory strikes were against white venire persons and that all of defense counsel's peremptory strikes up to that point were against white venire persons. (Tr. 243.)  The trial court noted that the all seven peremptory strikes exercised

---

[1] In New York, a reverse-*Batson* challenge is known as a *Kern* challenge.  *See People v. Kern*, 75 N.Y.2d 638, 650 (1990) (holding that the New York Constitution prohibits a criminal defendant from using peremptory challenges in a racially discriminatory manner).

by defense counsel were against white venire persons and that a pattern of discrimination had been established that required defense counsel to give a "race neutral reason" for using a peremptory strike against Ms. Dibernardo. (Tr. 243–44.) Defense counsel responded:

> Your Honor, with respect to [Ms. Dibernardo], when I questioned her, although she didn't say anything specific to me in terms, including in terms of cause, otherwise I would have made a cause challenge, she seemed to me to be not able to look straight at me when I looked at her. She seemed to be more nervous than some of the other jurors were except for the ones who said they were nervous. She had some difficulty, although she later added to the question correctly with respect to the issue of reasonable doubt as to the People's burden of proof beyond a reasonable doubt and she hesitated on the question of whether or not I would have to prove my client's innocence or she would expect me to prove my client's innocent, although she answered the questions correctly. But there was a hesitancy that I saw with her on those issues that led me to challenge her.

(Tr. 244–45.)

Ms. Dibernardo was asked three questions by defense counsel during *voir dire*. When asked if she would "keep the burden of proving the guilt in this case on the People beyond a reasonable doubt," Ms. Dibernardo unequivocally stated, "Yes." (Tr. 233.) When asked whether she would shift the burden to the defendant to prove his innocence, she answered "It would be up to you to prove it – well, the prosecution I guess to prove that." (*Id*.) Finally, when asked what the People "would have to prove he's guilty beyond what," Ms. Dibernardo stated that the People had to prove defendant guilty beyond "a reasonable doubt." (Tr. 233–34.)

After the defense counsel proffered his reason for exercising the peremptory strike, the prosecutor responded that Ms. Dibernardo properly "indicate[d] that the burden of proof is on the people." (Tr. 245.) The trial court went on to describe that, contrary to defense counsel's explanation, it observed Ms. Dibernardo's facial, vocal, and body language, and that she did not "appear to be nervous at all." (Tr. 245–46.) Additionally, the court commented that Ms. Dibernardo made eye contact with the court and with "everyone" during *voir dire*, and found that

Ms. Dibernardo had "answer[ed] all of the questions [during *voir dire*] in the right way." (*Id.*) Although defense counsel continued to assert that Ms. Dibernardo appeared "nervous and hesitant" as through she was "trying to give what appeared to be the correct answers," rather than what "she actually felt," the trial court ultimately concluded that not only did Ms. Dibernardo want to give the right answers, but that in fact she did give the right answers and granted the prosecutor's reverse-*Batson* challenge, sitting Ms. Dibernardo as juror number eight. (Tr. 246.)

### B. Trial

A five day trial was held, and on February 24, 1998, petitioner was convicted by a jury of murder in the second degree under N.Y.P.L. § 125.25(2), and criminal possession of a weapon in the second degree N.Y.P.L. § 265.03. (Tr. 874–75.)

At trial, Christopher Rivera testified that he was standing outside the Queensbridge Housing Development at approximately 1:00 AM on November 26, 1995, when he was approached by petitioner and another individual known as "Flip." (Tr. 586–595.) He testified that these two individuals "walked a few feet past" him while he was "leaning up against the gate" and that they were "no more than three to four feet away." (Tr. 594.) Rivera also testified that he had seen Flip in the Queensbridge Housing area "once every three days . . . for about five months" and that he knew petitioner through a mutual friend. (Tr. 595–597.) Rivera then recounted that after petitioner and Flip had walked by, "Flip asked Marty come here, [and] Marty went over to him." (Tr. 599.) Then as "they was talking, [petitioner] said: You don't remember the conversation we had down the block[,] [a]nd [petitioner] pushed [Marty] back and [petitioner] pulled out [a gun] and shot [Marty]." (Tr. 599–600.) Specifically, Rivera saw, from "four feet" away, petitioner pull a ".45 . . . chrome" gun "from his waist" and Marty "tr[ying] to turn around and run and then [petitioner] shot and then [Marty] tried to run again" when petitioner shot him a second time. (Tr. 600–601.)

This testimony was corroborated by Lisa Velasquez, a passenger in her sister's car, who was "looking for someone on the street to do business with [i.e. buy drugs from]" when she "heard [multiple gun] shots" and observed petitioner "with his arm out" and saw "flashes . . . [come] [f]rom the end of his arm." (Tr. 506–509, 521–522.) Velasquez also testified that she was approximately "ten, fifteen feet away," the area was well lit, and she was not under the influence of narcotics at the time. (Tr. 507, 523.) Another witness, Erica Brown, testified that she heard multiple gunshots around 1:40 AM on November 26, 1995 and that when she went to investigate, she saw Rivera standing over Marty Gantt and observed that neither man had any weapons (Tr. 473–476.)

Once the police arrived, Rivera left the scene because he "was [ ] scared" and went to inform Marty Gantt's mother that her son had been shot. (Tr. 605.) Mrs. Gantt testified that "about close to two o'clock" in the morning on November 26, 1995, Rivera informed her that Marty Gantt "had been shot in his back." (Tr. 425.) Dr. Cary Reiber, a medical examiner, testified that Marty Gantt was shot twice, once in the "left lower back" and once to the "right side of the torso of the right flank," and that the "cause of death was a gunshot wound to abdomen with perforations of major vessels and bowel." (Tr. 414–420, 426.)

On the day of the murder, Rivera was taken to the police precinct where he gave the police a description of the shooter but did not identify the shooter because he "was scared and [ ] didn't want nothing to do with" the investigation. (Tr. 606.) Nevertheless, on December 11, 1995, after speaking with his mother who was "best friends" with Mrs. Gantt, Rivera went to the police and stated that petitioner was the shooter who committed the murder. (Tr. 608–609, 425–426.) On cross-examination, Rivera testified that while he was incarcerated on an unrelated arrest, he spoke to petitioner's aunt, Sherlah Carpenter, and told her that petitioner had nothing to

do with the shooting. (Tr. 616.) Rivera also testified that he told petitioner's counsel, sometime in 1996, that Flip was the real shooter, that Flip was accompanied by an individual named "Nino" on the day of the murder, and that Flip had threatened Rivera with a gun to remain silent about the murder approximately two days after the shooting. (Tr. 618, 620–621.) However, Rivera maintained that he had lied to Ms. Carpenter and petitioner's counsel because petitioner was sitting nearby on both occasions and because he was scared based on earlier threats and an attempted slashing while he was incarcerated at Rikers Island. (Tr. 643–647.)

Petitioner argued an alibi defense and called only one witness, Derek Keyes. Keyes testified at trial that petitioner arrived at his apartment in Washington Heights at approximately 12:02 AM on November 26, 1995, and that petitioner "went into the back room" where the "other people that were [in Keyes'] apartment" while Keyes watched television in his bedroom. (Tr. 665–667, 670–671, 704.) Keyes further testified that petitioner slept over that night on a comforter in the living room and that between 5:00 AM and 6:00 AM, he saw petitioner sleeping on the floor. (Tr. 671–672, 706.)

## II. Direct Appellate Proceedings

Petitioner, represented by counsel, filed his direct appeal papers on May 23, 2002, that "raised four issues: i) The Trial Court's ruling on the Kerns challenges was erroneous thereby violating the Appellant's right to a fair trial; ii) The numerous instances of prosecutorial misconduct violated the Appellant's right to a fair trial and due process of law; iii) The prosecution's bolstering of the witness' testimony violated the appellant's right to a fair trial; and iv) The Trial Court deprived Appellant of his right to a fair trial by allowing the prosecution to present rebuttal evidence on collateral matters." (Doc. No. 25 at 11; *see also* Doc. No. 45-1.) The government filed its opposition papers on July 22, 2002. (Doc. No. 45-1.) On December 2,

2002, the Appellate Division issued its opinion affirming petitioner's conviction. In substance, the Appellate Division held that "the trial court's ruling was proper" where the "People established a prima facie case of discrimination based on the defense counsel's pattern of using peremptory challenges against white jurors," the defense counsel failed to "provide a nonpretextual, racially-neutral explanation for his challenge . . . as to the subject juror," and the court found "that the reason given for the challenge was pretextual." *People v. Lawson*, 300 A.D.2d 319, 319 (2d Dep't 2002). The Appellate Division also determined that petitioner's "remaining contentions are either unpreserved for appellate review or without merit." *Id.*

On July 17, 2003, petitioner, through counsel, sought leave to appeal the affirmance of his conviction. The government opposed petitioner's application for leave on August 22, 2003, and the Court of Appeals denied leave to appeal on August 25, 2003. *People v. Lawson*, 100 N.Y.2d 595 (2003).

## III.    Post-Conviction Proceedings

Petitioner, *pro se*, applied for a writ of error *coram nobis* on January 12, 2005, to vacate, on the ground of ineffective assistance of appellate counsel, the affirmation of his conviction by the Appellate Division. (*See* Doc. No. 45.) In his papers, petitioner contended that appellate counsel failed "to raise the viable issue that there was insufficient evidence to support [petitioner]'s conviction of depraved indifference murder, which was preserved for appellate review, depriv[ing] him of effective assistance of counsel on his direct appeal," and that there was "insufficient evidence to support [petitioner]'s conviction of depraved indifference murder; had appellate counsel raised this issue [the Appellate] Court would have reversed [petitioner]'s conviction." (Doc. No. 45 at 11.)

The government opposed the application for a writ of error *coram nobis* and in its papers, dated March 11, 2005, argued that appellate counsel had provided effective assistance and that the appellate court was "not empowered to hear [petitioner]'s second point, which seeks review on the merits of his underlying claim of error in the conviction for depraved-indifference murder." (Doc. No. 45 at 54.) In support of the government's opposition, petitioner's appellate counsel affirmed that "the status of the law was such that the issue raised by [petitioner] in his error corum [*sic*] nobis motion was not viable . . . [and that he] did not recognize the issue in May 2002." (Doc. No. 45 at 59–60.) Appellate counsel also submitted approximately ten exhibits detailing his correspondence with petitioner regarding the appellate brief. (*See* Doc. No. 45 at 61–83.)

In response, petitioner not only submitted his reply papers on April 8, 2005, he also subsequently submitted, on June 24, 2005, a "Supplemental Memorandum of Law" raising a "claim that appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel due to trial counsel's failure to specify his theory for his motion for a trial order of dismissal of the depraved indifference murder charge." (Doc. No. 45 at 101.) The government submitted a letter brief in response to petitioner's supplemental memorandum of law on August 10, 2005, and petitioner replied to the government's response on August 17, 2005, and on August 21, 2005. (*See* Doc. No. 45 at 113–17.)

On March 7, 2006, the Appellate Division denied petitioner's request for a writ of error *coram nobis* and held that "appellate had failed to establish that he was denied the effective assistance of appellate counsel." *People v. Lawson*, 27 A.D.3d 485 (2d Dep't 2006). The Court of Appeals denied petitioner's request for leave to appeal on June 2, 2006. *People v. Lawson*, 7 N.Y.3d 758 (2006).

**IV.  Federal Proceedings**

On June 3, 2004, petitioner filed his petition for writ of habeas corpus in this Court.[2] (Doc. No. 1.)  After respondent filed its opposition to the petition for a writ of habeas corpus, petitioner sought to stay his petition pending state court proceedings in which petitioner intended to challenge his conviction based on a change in New York's law regarding depraved indifference murder.  (*See* Doc. No. 13.)  On December 14, 2004, the Honorable Nina Gershon granted petitioner's request to hold the habeas petition in abeyance pending resolution of his state court proceedings.  (Doc. No. 14.)

Two years later, on June 23, 2006, petitioner informed the court that he had "exhausted 3 issues in a writ of Error Coram Nobis to the Appellate Division Second Department" and sought to amend his habeas petition.  (Doc. No. 17 at 1–3.)  Respondent filed its opposition to petitioner's amended habeas petition (*see* Doc. Nos. 19–21) and petitioner filed a traverse and memorandum of law in reply. (Doc. No. 25.)

Thereafter, on September 25, 2008, petitioner once again moved this Court to stay and hold in abeyance his petition for habeas corpus relief to allow him to exhaust "some issues of insufficiency of evidence with respect to Depraved Indifference Murder."  (Doc. No. 28.) Respondent opposed petitioner's request for a stay (*see* Doc. Nos. 29–31), and petitioner replied. (Doc. No. 32.)  This Court ordered petitioner to establish "good cause" why a stay is warranted and demonstrate that his unexhausted claim was not plainly meritless.  (Doc. No. 33.)  Having failed to comply this Court dismissed petitioner's application for a stay without prejudice and with leave to renew upon a proper showing.  Petitioner then filed an affirmation in support of his application for a stay on January 3, 2011.  The Court, finding that petitioner's affirmation neither

---

[2] Petitioner's conviction became final on November 23, 2003, ninety days after the New York Court of Appeals denied leave to appeal.  Because this petition was filed prior to November 23, 2004, the petition is timely.  28 U.S.C. § 2244(d)(1)(A).

demonstrated good cause nor showed the potential merit of any unexhausted claims, denied petitioner's request to stay his petition for habeas corpus relief. (Doc. No. 39.)

On March 14, 2011, petitioner submitted a letter brief and a supplemental memorandum of law "to clarify and strengthen my argument with [petitioner's] pending Amended Writ of Habeas Corpus." (Doc. No. 41.) In his letter brief, petitioner cites principally to three additional cases that he wishes this Court to consider – *People v. Baptiste*, 51 A.D.3d 184 (3d Dep't 2008), *Policano v. Herbert*, 7 N.Y.3d 588 (2006), and *Soto v. Conway*, 565 F. Supp. 2d 429 (E.D.N.Y. 2008). In his corresponding "supplemental memorandum of law," petitioner attempts to distinguish the facts of his case from that of *People v. Register*, 60 N.Y.2d 270 (1983) to argue that the depraved indifference murder charge should not have been submitted to the jury because the evidence does not support that charge, and that appellate counsel was ineffective for "bypass[ing] a properly preserved issue, such as a insufficiency of evidence/submission of depraved indifference murder, when there was no evidence of recklessness nor factual settings . . . to support conviction." (Doc. No. 42 at 11.) The case law petitioner cites and his arguments have been considered by this Court in this Memorandum and Order.[3]

Finally, on August 10, 2012, petitioner submitted a letter further elaborating his reverse-*Batson* claim and requesting that the Court "allow [petitioner] the opportunity to an [*sic*] evidentiary hearin [*sic*] because [his] issues are worthy of such." (Doc. No. 43 at 2–3.)

---

[3] Although petitioner appears to raise new grounds for his habeas petition, in fact, these two grounds are derivative of petitioner's claim that there was insufficient evidence to support his conviction for depraved indifference murder and petitioner's claim that he was denied effective assistance of appellate counsel because appellate counsel failed to argue that there was insufficient evidence to support his conviction for depraved indifference murder. *See e.g.*, *Lewis v. Phillips*, 04-cv-1117, 2009 WL 362290, at *1–2 (S.D.N.Y. Feb. 13, 2009) (rejecting petitioner's claim that his due process rights were violated when the trial court submitted the depraved indifference charge to the jury because there was sufficient evidence to support a finding of depraved indifference under *Register* where petitioner shot the victim three times in the head at very close range). Because this Court finds *infra* that there was indeed sufficient evidence to sustain petitioner's conviction for depraved indifference murder and that petitioner was not denied effective assistance of appellate counsel, these two arguments are duplicative and meritless.

# APPLICABLE LAW

## I.  Standard of Review Under 28 U.S.C. § 2254(d)(1)

In deciding a federal habeas corpus petition, the Court must apply the standard of review

set forth by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 ("AEDPA").

AEDPA requires a rigorous standard of review with regard to petitions filed by state prisoners.

*See Williams v. Taylor*, 529 U.S. 362, 402–03 (2000).  Under AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) . . . was based on an unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Though the "contrary to" and "unreasonable application" clauses of

§ 2254(d)(1) are analyzed independently, both limit the source of the "clearly established law" to

the jurisprudence of the Supreme Court.  *Williams*, 529 U.S. at 404–05, 412; *see also Howard v.

Walker*, 406 F.3d 114, 122 (2d Cir. 2005).

A state court "adjudicates a state prisoner's federal claim on the merits when it (1)

disposes of the claim on the merits, and (2) reduces its disposition to judgment."  *Sellan v.

Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (citation and internal quotation marks omitted).

"When a state court does so, a federal habeas court must defer in the manner prescribed by 28

U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court

does not explicitly refer to either the federal claim or to relevant federal case law."  *Id*.  This is

because "federal courts recognize a conclusive presumption that, when presented with an express

federal claim, a state court's decision rests principally upon an application of federal law even

absent any express reference to federal authority." *Reznikov v. David*, No. 05 Civ. 1006, 2009 WL 424742, at *3 (E.D.N.Y. 2009) (citing *Sellan*, 261 F.3d at 314).

The Supreme Court has noted that a state court decision will be "contrary to" established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if a state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405–06.

Further, the Supreme Court has held that, with respect to the "unreasonable application" clause, a federal court may grant a petitioner's writ of habeas corpus "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 413. The state court's application, however, must be "objectively unreasonable," *id.* at 409–10, a "higher threshold" than "incorrect." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Moreover, if a federal court "finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." *Howard*, 406 F.3d at 122 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 629–30 (1993)).

AEDPA requires that federal courts treat state court adjudication with great deference. *Brown v. Artuz*, 283 F.3d 492, 500 (2d Cir. 2002). This deference is warranted "even if the state court decision does not explicitly refer to either the federal claim or to relevant federal case law." *Stellan*, 261 F.3d at 312. Moreover, this standard extends to factual determinations made by the state court: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner can only rebut this presumption of correctness with clear and convincing evidence. *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003).

The "unreasonable determination" inquiry under § 2254(d)(2) has also been elucidated by the Supreme Court: "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). A state court's application of federal law must be "objectively unreasonable." *Id.* at 409. This is even more stringent a requirement than clear error, which can be distinguished from unreasonableness for the purposes of this inquiry. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Indeed, the Second Circuit has required "some increment of incorrectness beyond error," *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000), but noting that though "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000) (citations and internal quotation marks omitted).

## II.    The Exhaustion Requirement

Section 2254 also codifies an exhaustion requirement, providing that a federal habeas court may not grant "[a]n application for a writ of habeas corpus . . . unless it appears that — (A) the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); *see also Rose v. Lundy*, 455 U.S. 509, 515–16, 518 (1982) ("The exhaustion doctrine existed long before its codification [in 28 U.S.C. § 2254] by Congress in 1948" and is "designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."). In the Second Circuit, courts must follow a two-step exhaustion analysis:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

*Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981); *see also* 28 U.S.C. § 2254(c).

In order to "fairly present" a constitutional claim, a federal habeas petitioner must alert the state appellate court that a federal constitutional claim is at issue. *See, e.g.*, *Grady v. Lefevre*, 846 F.2d 862, 864 (2d Cir. 1988); *Rodriguez v. Sabourin*, 274 F. Supp. 428, 433 (S.D.N.Y. 2003). The Second Circuit, sitting *en banc*, has further stated:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of New York*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc), *cert. denied*, 464 U.S. 1048 (1984).

## III. Adequate and Independent State Ground Doctrine

The Supreme Court has noted that the "adequate and independent state ground doctrine applies on federal habeas" such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations and internal quotation marks omitted); *see also Lee v. Kemna*, 534 U.S. 362, 376 (2002) ("Ordinarily, violation of firmly established and regularly followed state rules . . . will be adequate to foreclose review of a federal claim." (citation and internal quotation omitted)); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Messiah v. Duncan*, 435 F.3d 186, 195 (2d Cir. 2006) ("Federal courts considering habeas corpus petitions are generally barred from reviewing the decisions of state courts insofar as those decisions are predicated on adequate and

14

independent state grounds.") Thus, a federal court may not entertain a procedurally barred claim "absent a showing of cause and prejudice to excuse the default," or unless the petitioner "can demonstrate actual innocence of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 387–88 (2004) (citing *Murray*, 477 U.S. at 496).

In order to show "cause" for a default, a habeas petitioner must demonstrate that "some objective factor external to the defense" prevented petitioner from presenting the claim. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Where a petitioner has failed to demonstrate cause, the court need not address the issue of prejudice. *Rivera v. Artus*, No. 04 Civ. 5050, 2007 WL 3124558, *6 (E.D.N.Y. Oct. 25, 2007); *see also Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("[W]e need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice."). If petitioner does establish cause, petitioner must then demonstrate "prejudice" by showing that "'there is a reasonable probability' that the result of the trial would have been different" had the alleged constitutional violation not occurred. *Strickler v. Greene*, 527 US. 263, 289 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

The "fundamental miscarriage of justice" exception to a procedural bar provides relief for those "rare" and "extraordinary" cases in which a habeas petitioner is able to establish his actual innocence and show that the claimed error led to his conviction. *Schlup v. Delo*, 513 U.S. 298, 321 (1995) (citing *Murray*, 477 U.S. at 496). "Explicitly tying the miscarriage of justice exception to innocence thus accommodates both the systemic interests in finality, comity, and conservation of judicial resources, and the overriding individual interest in doing justice in the 'extraordinary case.'" *Id.*

**DISCUSSION**

**I.    Reverse-*Batson* Challenge**

Petitioner first argues that the state trial court unreasonably applied *Batson* when it

granted the prosecutor's reverse-*Batson* challenge and seated Ms. Dibernardo as juror number

eight despite the defense counsel's alleged non-pretextual, race-neutral explanation for his use of

a peremptory strike.  Petitioner further argues that the Appellate Division, Second Department,

*People v. Lawson*, 300 A.D.2d 319 (2d Dep't 2002), *lv denied*, 100 N.Y.2d 595 (2003),

unreasonably applied *Batson* when it affirmed the trial court's decision.  Because petitioner has

presented the factual and legal basis of this claim to the highest court of the state, this claim has

been exhausted.  *See Galdamez v. Keane*, 394 F.3d 68, 73 (2d. Cir. 2005).

In *Batson v. Kentucky*, the Supreme Court held that "[p]urposeful racial discrimination in

selection of the venire violates a defendant's right to equal protection because it denies him the

protection that a trial by jury is intended to secure."  476 U.S. 79, 86 (1986).  The Court has

extended *Batson* to "prohibit[] defense counsel from exercising racially motivated peremptory

challenges" which has "come to be known as a 'reverse-*Batson*' challenge."  *United States v.*

*Thompson*, 528 F.3d 110, 115 (2d Cir. 2008) (citing *Georgia v. McCollum*, 505 U.S. 42, 59

(1992)).  *Batson* established a "three-step burden-shifting mechanism for evaluating allegations

of race discrimination during jury selection at a criminal trial."  *Brown v. Alexander*, 543 F.3d

94, 100 (2d Cir. 2008).  As the Second Circuit has explained:

> At the first stage of the inquiry, the [opponent of the strike] must establish a
> "*prima facie*" case by showing that the totality of the relevant facts gives rise to
> an inference of discriminatory purpose.  Once the [opponent of the strike] has
> made out such a *prima facie* case, the burden shifts to the [proponent of the
> strike] to provide a race-neutral explanation for its peremptory strikes.  Finally,
> the trial court must determine whether the [opponent of the strike] has
> established purposeful discrimination, in which case the selection process was a
> violation of the Equal Protection Clause of the Fourteenth Amendment.

16

*Id.* at 100–01 (citing *Batson*, 476 U.S. at 93–94, 97) (internal quotation marks omitted). "[G]reat

deference" is given to the trial court's determination of whether the opponent of the strike has

"carr[ied] his burden of proving discriminatory intent" and "a trial court's finding on the issue of

discriminatory intent [is not overturned] unless it is clearly erroneous." *United States v. Lee*, 549

F.3d 84, 94 (2d Cir. 2008) (citing *Hernandez v. New York*, 500 U.S. 352, 369 (1991)). The

review is further circumscribed by AEDPA, which requires that "in evaluating the trial court's

determination . . . this Court could grant petitioner's application for a writ of habeas corpus only

if it were to find that the trial court acted unreasonably in crediting or discrediting the race-

neutral explanations offered by the nonmoving party . . . [and requires that] a determination of a

factual issue made by a State Court [be] presumed to be correct, unless that presumption is

rebutted by clear and convincing evidence." *Alston v. Phillips*, 703 F. Supp. 2d 150, 175

(E.D.N.Y. 2010) (internal quotation marks and citations omitted).

Petitioner argues that his rights to equal protection of the law were violated because: (1)

the "trial court never . . . indicated that the prosecution established purposeful discrimination";

(2) the "trial court never gave the prosecution the opportunity to make its case of purposeful

discrimination"; (3) even if the prosecution had established a *prima facie* case, "[t]he record [ ]

provides that defense counsel's reason was legitimate and was absent a motive to discriminate";

(4) the trial court erred by not "mak[ing] a determination on whether defense counsel's reason

was a pretext for purposeful discrimination"; and (5) the trial court's conclusion is not entitled to

a "presumption of correctness" because "the trial court failed to resolve the factual issues

involved and its ruling was not fairly supported by the record." (*See* Doc. No. 25 at 16–23.) The

record belies all of petitioner's contentions.

Regarding petitioner's first two contentions, although the trial court did not use the words *prima facie* or "purposeful discrimination," it is evident from the record that the trial court allowed the prosecutor to make her case and found that the prosecutor had established a *prima facie* case of discrimination. After the prosecutor presented her arguments in support of her second reverse-*Batson* challenge, the trial court denied the challenge because it found the prosecutor had not established "any pattern here" of discrimination. (Tr. 241.) Then, in response to the prosecutor's third reverse-*Batson* challenge, the trial court found that all seven of defense counsel's peremptory strikes were against white venire persons and that it "discern[ed] a pattern here" of discrimination. (Tr. 244.) Consequently, the trial court asked defense counsel to "give [ ] a race neutral reason for that perempt just [for Ms. Dibernardo]" and defense counsel proffered an explanation. (*Id.*) As such, the record indicates that the trial court did allow the prosecutor the opportunity to argue her case and found that the prosecutor established a *prima facie* case of discrimination. *See Messiah v. Duncan*, 435 F.3d 186, 199 n.6 (2d Cir. 2006) ("[A] trial judge is not obligated to provide a 'talismanic recitation of specific words in order to satisfy *Batson*.'" (citation omitted)).

Similarly, concerning petitioner's remaining arguments regarding defense counsel's proffered explanation and the trial court's determination, it is evident that the trial court weighed defense counsel's explanation, found it contradicted the evidence before it, and thus sat Ms. Dibernardo as a juror. *Blalock v. Fisher*, 04-cv-2252, 2010 WL 2891185, at *3 (S.D.N.Y. July 12, 2010) ("Because the trial judge's findings in a *Batson* claim will largely turn on her evaluation of credibility, a reviewing court ordinarily should give those findings great deference."); *see also Thaler v. Haynes*, 130 S. Ct. 1171, 1175 (2010) ("[W]hen the explanation

for a peremptory challenge 'invoke[s] a juror's demeanor,' the trial judge's 'first hand observations' are of great importance." (citation omitted)).

Defense counsel's proffered race-neutral explanation stressed Ms. Dibernardo's "nervous[ness]," "hesitancy," and the fact that she seemingly expected defense counsel to prove his client's innocence. (Tr. 244–45.) Nevertheless, these contentions were found to be contrary to the weight of evidence and discredited by the trial court. Indeed, when asked if she would "keep the burden of proving the guilt in this case on the People beyond a reasonable doubt," Ms. Dibernardo unequivocally stated, "Yes," (Tr. 233), and even reaffirmed this principal by responding that she would not shift the burden because "[i]t would be up to . . . the prosecution . . . to prove" guilt and that the People had to prove defendant guilty beyond "a reasonable doubt." (Tr. 233–34.) Moreover, the trial court found, based on its observations of Ms. Dibernardo's "facial, vocal, [and] bodily" expressions, that she "didn't appear to be nervous at all" and that she gave the "correct answers" regarding the government's burden of proof. (Tr. 245–46.) Petitioner has not shown how the trial court acted unreasonably in discrediting defense counsel's race-neutral explanation and has not provided any evidence to rebut the trial court's factual determinations. Thus, the record indicates that the "trial court fulfilled its duty to rule at the so-called 'step three' of the *Batson* framework by expressing a clear intention to uphold or reject a strike after listening to the challenge, the race-neutral explanation and the arguments of the parties." *Messiah v. Duncan*, 435 F.3d at 189; *see also Galarza v. Keane*, 252 F.3d 630, 639 (2d Cir. 2001). Consequently, this Court finds there is adequate evidence to justify the trial court's conclusions.

Therefore, the Appellate Division, Second Department did not unreasonably apply *Batson* when it affirmed the trial court's decision, *People v. Lawson*, 300 A.D.2d 319, 319 (2d

Dep't 2002), and the Court of Appeals did not unreasonably apply *Batson* when it denied

petitioner leave to appeal. *People v. Lawson*, 100 N.Y.2d 595 (2003). Accordingly, petitioner's

reverse-*Batson* challenge does not warrant habeas relief.

## II.    Claims For Ineffective Assistance of Appellate Counsel

Petitioner also challenges his conviction on the ground that he was denied effective

assistance of appellate counsel. Petitioner argues that appellate counsel failed to: 1) raise a

claim that petitioner's conviction for depraved indifference murder was based on legally

insufficient evidence, and 2) raise a claim for ineffective assistance of trial counsel because trial

counsel did not "specifically point out the deficiency in the evidence as to the depraved

indifference murder charge." (Doc. No. 25 at 80.)

Petitioner, through his writ of error *coram nobis*, has exhausted his claims for ineffective

assistance of appellate counsel. Petitioner alleged in his *coram nobis* petition that "Appellate

counsel's failure to raise the viable issue that there was insufficient evidence to [petitioner]'s

conviction of depraved indifference . . . deprived him of effective assistance of counsel on his

direct appeal." Doc. No. 45 at 11.) Subsequently, petitioner supplemented his earlier petition

and claimed "ineffective assistance of appellate counsel based on appellate counsel's failure to

raise a claim of ineffective assistance of trial counsel based on trial counsel's failure to specify a

specific theory as grounds for his motion for a trial order of dismissal of the depraved

indifference murder charge." (Doc. No. 45 at 105.) The Appellate Division, citing *Jones v.

Barnes*, 463 U.S. 745 (1983) and *People v. Stultz*, 2 N.Y.3d 277 (2004), found that petitioner

"failed to establish that he was denied the effective assistance of appellate counsel."[4] *People v.

Lawson*, 27 A.D.3d 485, 809 N.Y.S.2d 915 (2d Dep't 2006), *lv denied*, 7 N.Y.3d 758 (2006).

---

[4] Petitioner contends that *Jones* "lacks the two-prong standard of *Strickland*" and that consequently the Appellate Division opinion is somehow deficient. (Doc. No. 25 at 58.) This argument is without merit; petitioner does not cite to, nor can this Court find, any case which questions the validity of *Jones* on the basis of *Strickland*.

Thus, petitioner's claims for ineffective assistance of appellate counsel are properly exhausted. *See Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981).

Because petitioner's claims for ineffective assistance were denied on the merits, petitioner must show that the decisions were contrary to or an unreasonable application of Supreme Court authority. The Supreme Court authority behind petitioner's claim is *Strickland v. Washington*, 466 U.S. 668 (1984), which applies to claims of ineffective assistance of trial and appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992). To establish a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) that "counsel's representation fell below an objective standard of reasonableness"; and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 669. In applying this standard, judicial scrutiny of counsel's actions must be highly deferential. *Id*. at 689; *see also Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (holding "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment") (quoting *Strickland*, 466 U.S. at 690)).

A petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Nevertheless, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones*, 463 U.S. at 750–54); *see also Strickland*, 446 U.S. at 690–91 (noting that appellate counsel's strategic choices with regarding to which claims

to bring on appeal are "virtually unchallengeable"). Indeed, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751–52). Thus, reviewing courts should not "second-guess" the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Jones*, 463 U.S. 754. Moreover, in order to establish prejudice, a petitioner must show "that there was a reasonable probability that [his] claim would have been successful" on appeal. *Mayo*, 13 F.3d at 534 (citing *Claudio*, 982 F.2d at 803). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63–64 (2d Cir. 2005) (citation omitted).

## A. Shift In New York's Depraved Indifference Law

This Court, following many other courts in this circuit, notes the shift in New York's depraved indifference law, as set forth in *People v. Hafeez*, 100 N.Y.2d 253 (2003); *People v. Gonzalez*, 1 N.Y.3d 464 (2004); *People v. Payne*, 3 N.Y.3d 266 (2004); and *People v. Suarez*, 6 N.Y.3d 202 (2005), each of which incrementally pointed the law in a direction different from its initial formulation in *People v. Register*, 60 N.Y.2d 270 (1983). *See Rustici v. Phillips*, 497 F. Supp. 2d 452, 484–86 (E.D.N.Y. 2007) (discussing developments in New York law regarding the depraved indifference statute and sufficiency of the evidence). Despite this marked evolution, however, the New York Court of Appeals held that the emergent rule is not retroactive; i.e., courts may not disturb depraved indifference murder convictions finalized prior to the above described shift in the law. *Policano v. Herbert*, 7 N.Y.3d 588, 603–04 (2006). The "point of no return" in the evolution of New York's depraved indifference law is October 19, 2004, when the Court of Appeals decided *Payne*. *People v. Baptiste*, 51 A.D.3d 184, 185 (3d

Dep't 2008).  This holding has been recognized by the Second Circuit.  *Epps v. Poole*, 687 F.3d 46, 54–55 (2d Cir. 2012).

Under the *Register* legal framework, the New York Court of Appeals reasoned that "purposeful homicide itself is the ultimate manifestation of indifference to the value of human life," and that it was not inappropriate for the trial court to let the jury decide whether defendants should be convicted of intentional or depraved indifference murder.  *People v. Sanchez*, 98 N.Y.2d. 373, 384 (2002) (upholding conviction for depraved indifference murder where defendant allegedly fired a gun pointed at victim's chest from a distance of twelve to eighteen inches and then fled), *overruled by People v. Feingold*, 7 N.Y.3d 288 (2006).  The requirement that a defendant's conduct occur "[u]nder circumstances evincing a depraved indifference to human life" referred to "neither the *mens rea* nor the *actus reus*" but rather to "the factual setting in which the risk creating conduct must occur."  *Register*, 60 N.Y.2d at 276.  Indeed, the relevant focus at that time was "not [on] the mental element involved but [on] the objective circumstances in which the act occurs" and it is these circumstances that "define the degree of risk created by the defendant."  *Policano v. Herbert*, 7 N.Y.3d at 597.

However, the Court of Appeals recognized that "[a]fter *Register* and *Sanchez*, and beginning in 2003 [with *People v. Hafeez*, 100 N.Y.2d 253 (2003)], a number of decisions . . . have pointed the law [of depraved indifference murder] in a different direction."  *Feingold*, 7 N.Y.3d at 292.  Of these decisions, only *Hafeez* had been decided prior to petitioner's conviction becoming final.  In *Hafeez*, the Court of Appeals found where months after an unsuccessful confrontation with the deceased, the killer lay in wait for the victim and stabbed him to death with "a single deliberate wound to the chest that perforated the victim's heart," such evidence could not support a conviction for depraved indifference murder because it established "a

quintessentially intentional attack directed solely at the victim." 100 N.Y.2d at 258. Ultimately, this shift in the law of depraved indifference murder culminated with the Court of Appeals holding that "depraved indifference is a culpable mental state." *Feingold*, 7 N.Y.3d at 294. With this change, the Court of Appeals found that "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder,"[5] and differentiated *Payne* from "homicides in which a defendant . . . shoots into a crowd or otherwise endangers innocent bystanders." *Payne*, 3 N.Y.3d at 271.

### B. Ineffective Assistance of Appellate Counsel For Failure to Challenge Sufficiency of Evidence Supporting Depraved Indifference Murder Conviction

In assessing an attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, "'viewed as of the time of counsel's conduct' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d. Cir. 1994). Petitioner's conviction (on February 24, 1998), the Appellate Division's affirmance (on December 2, 2002), and the Court of Appeal's denial of leave to appeal (on August 25, 2003), all occurred prior to the change in depraved indifference law on October 19, 2004. Moreover, appellate counsel's brief, submitted on July 22, 2002, pre-dated *Hafeez* by over a year. Therefore, *Register* and *Sanchez* were the controlling precedent on the law of depraved indifference murder for purposes of petitioner's claim here.[6]

---

[5]Nonetheless, the New York Court of Appeals has identified one-on-one murders that may qualify as depraved indifference murders, including a one-on-one murder where a defendant recklessly risked the victim's death without intending to kill. *See People v. Suarez*, 6 N.Y.3d 202, 212–213 (2005).

[6] Petitioner contends that *Payne* does not "represent [ ] a creation of new legal principle, but the application of long settled New York Law to the new facts" and therefore supports finding appellate counsel ineffective for failing to argue that petitioner's conviction for depraved indifference murder was based on legally insufficient evidence. (Doc. No. 25 at 40–43.) As support of this assertion, petitioner mistakenly relies on *People v. Gallagher*, 69. N.Y. 525 (1987), *Policano v. Hebert*, 430 F.3d 82 (2d Cir. 2005) ("*Policano I*"), and *People v. Gonzalez*, 160 A.D.2d 502 (1st Dep't 1990). (*See* Doc. No. 25 at 40–43, 46–47).

With the state of the depraved indifference law at the time focusing on the objective circumstances in which the act occurred rather than the mental state, appellate counsel could have reasonably believed that it would have been futile to argue that evidence was insufficient to sustain a depraved murder conviction in petitioner's case where he "pull[ed] out a .45 caliber handgun from his waist and shot [the victim] twice" at relatively close range. (Doc. No. 25 at 48); *see Gaskin v. Graham*, 08-cv-1124, 2009 WL 5214498, at *23–24 (E.D.N.Y. Dec. 30, 2009) (holding that counsel was not ineffective since, "[g]iven the *Register/Sanchez* legal framework in New York at the time of petitioner's trial in 2002, both trial and appellate counsel could have reasonably believed that it would have been utterly futile to argue that the evidence was insufficient to sustain depraved indifference murder" where petitioner held a gun to victim's head and fired a fatal shot); *Crespo v. Fischer*, 06-cv-2577, 2006 WL 3486805, at *7–8 (S.D.N.Y. Nov. 27, 2006) (holding appellate counsel not ineffective for failure to raise on appeal the sufficiency of evidence as to depraved indifference because *Register* was the controlling law where petitioner placed a plastic bag over victim's head, sealed it at the neck, covered the victim's head and face with duct tape, then kicked victim's head and remained present until victim died). Therefore, appellate counsel "cannot be held to be ineffective when he reasonably

---

The Second Circuit subsequently withdrew its decision in *Policano I* and noted that its "reliance on [ ] *Gallagher* . . . had been mistaken." *Policano v. Herbert*, 507 F.3d 111, 114 (2d Cir. 2007). Moreover, the New York Court of Appeals explained that at the relevant time, "*Gallagher* was read as limited to charging procedure . . . [and the fact that] a defendant's acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty verdict on a theory of depraved indifference." *Id.* (quoting *Policano v. Herbert*, 7 N.Y.3d 588 at 600–01 (2006)).

Likewise, *Gonzalez* is inapposite. In *Gonzalez*, the Appellate Division held that "no reasonable view of the evidence [could] support the theory that the shooting which resulted in [the victim's] death was reckless" where eyewitness testimony was introduced showing that a co-defendant ordered the shooters to shoot the victim if he walked in the shooters' direction and the victim was prepared to strike the shooters with a golf club. 160 A.D.2d. at 503–504. The facts are highly distinguishable in petitioner's case – petitioner never received instructions to shoot the victim and the victim did not threaten petitioner with bodily harm – and, as such, *Gonzalez* does not support petitioner's argument.

relied on the interpretation of New York law regarding depraved indifference murder as it was at the time" of petitioner's appeal. *Fore v. Ercole,* 594 F. Supp. 2d 281, 305 (E.D.N.Y. 2009).[7]

### C. Ineffective Assistance of Appellate Counsel For Failure to Raise Ineffective Assistance of Trial Counsel

Petitioner also contends that he was denied effective assistance of appellate counsel because appellate counsel did not argue that petitioner was denied effective assistance of trial counsel where trial counsel failed to preserve the insufficiency of the evidence claim. For petitioner to succeed on this argument, petitioner would have to show that trial counsel's failure to preserve the insufficiency of the evidence claim was outside the range of reasonable professional assistance viewed at the time of trial counsel's conduct in 1998. *See Soto v. Conway*, 565 F.Supp.2d 429, 436 (E.D.N.Y. 2008) ("[I]n reviewing counsel's performance for cause, this Court considers not what the law of New York was or is, but rather whether, in light of the case law known to him at the time, counsel's conduct fell below an objective standard of reasonableness.").

As discussed above, *Register* was the legal framework for depraved indifference murder in 1998. Petitioner bases his claim for ineffective assistance on a change in the law of depraved indifference murder in New York and cites to case law that post-dates his trial by many years. (*See* Doc. No. 25 at 76–80.) Trial counsel and appellate counsel here were "not required to

---

[7] In arguing that appellate counsel failed to raise the insufficiency of the evidence argument, petitioner also addresses the four arguments that appellate counsel raised on appeal and contends that appellate counsel was ineffective because he "omitted a significant and obvious issue while pursuing issues that were clearly and significantly weaker." (Doc. No. 25 at 40; *see also* Doc. No. 25 at 33–41.) This argument fails; however, because the stronger arguments in petitioner's estimation, the claims related insufficient evidence, are not truly strong and meritorious in light of the controlling case law on depraved indifference murder at the time of petitioner's trial and appeal. Moreover, petitioner merely alleges in conclusory fashion that appellate counsel "inadequately argued" the reverse-*Batson* issue and that the other three issues were not properly preserved for appellate review. (Doc. No. 25 at 35.) Petitioner has not demonstrated that appellate counsel's representation fell below an objective standard of reasonableness, nor has petitioner alleged that absent appellate counsel's alleged errors the factfinder would have had a reasonable doubt respecting guilt. Thus, appellate counsel's representation met the constitutional standards set forth in *Strickland*.

forecast changes in the governing law." *Mayo*, 13 F.3d at 533. Thus, petitioner fails to show that the failure to preserve the insufficiency of evidence claim was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 687. Under these circumstances, trial counsel could reasonably have believed that it would be futile to argue that the evidence was insufficient to sustain a depraved murder conviction and therefore an objection regarding the "intentional nature of the shooting so as to disqualify the shooting as 'reckless'" would have been denied. (Doc. No. 25 at 78.); *see also Alexander v. Graham*, 07-cv-59, 2008 WL 4239167, at *6 (E.D.N.Y. Sept. 11, 2008) (holding trial counsel was not ineffective for failing to raise insufficiency of the evidence with respect to depraved indifference murder where "[a] rational trier of fact could have considered that [defendant] had known [the victim] . . . and that like the defendant in *Sanchez*, [defendant] shot [victim] in his upper chest rather than somewhere certain to cause death, intending to disable rather than kill him"); *Cruz v. Conway,* 05-cv-4750, 2007 WL 1651855, at *7 (E.D.N.Y. June 6, 2007) (holding counsel not ineffective for failure to object to sufficiency of the evidence as to depraved indifference murder because *Register* was the controlling law). Accordingly, trial counsel was not ineffective for failing to preserve the insufficiency of the evidence claim, and appellate counsel was not ineffective for failing to raise the argument that petitioner was denied effective assistance of trial counsel.

## III.    Claim For Insufficiency of Evidence

Additionally, petitioner attempts to challenge his conviction on the ground that there was insufficient evidence to support his conviction of depraved indifference murder.

### A.  Exhaustion Requirement

Petitioner argued in his *coram nobis* papers that "[t]here was insufficient evidence to support [petitioner]'s conviction of depraved indifference murder; had appellate counsel raised this issue . . . [the appellate court] would have reversed [petitioner]'s conviction." (Doc. No. 45

at 11.)  However, raising an issue *other than* ineffective assistance of appellate counsel in a

*coram nobis* proceeding does not constitute a "fair presentation" of the issue to a state court for

exhaustion purposes.  *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (finding claims of error

at the trial level unexhausted when presented in a writ of error *coram nobis* because "'the writ of

*coram nobis* lies in [the state appellate court] only to vacate an order determining an appeal on

the ground that the defendant was deprived of the effective assistance of appellate counsel.'"

(citing *People v. Gordon*, 584 N.Y.S.2d 318, 318 (2d Dep't 1992)).

Moreover, because petitioner has already used his one appeal to the New York Court of

Appeals to which he is entitled and a motion to vacate judgment pursuant to N.Y. Crim. Proc.

Law § 440.10 would be futile,[8] this claim is "deemed exhausted" but procedurally barred from

federal habeas review.  *See Harris v. Reed*, 489 U.S. 255, 263 (1989).  Although petitioner

argues that his claim for insufficient evidence was preserved by trial counsel, he acknowledges

that "trial counsel did not specify any theory for his motion to dismiss, and did not 'specifically'

point out the deficiency in the evidence as to the depraved indifference murder charge."  (Doc.

No. 25 at 74.)  It is also undisputed that this claim was not raised on direct appeal and hence not

properly preserved.  *See People v. Hawkins*, 11 N.Y.3d 484, 492 (2008) (to properly preserve a

challenge to the legal sufficiency of a conviction, "a defendant must move for a trial order of

dismissal, and the argument must be 'specifically directed' at the error being urged").

Nonetheless, "[w]here a [petitioner] has procedurally defaulted a claim by failing to raise

it on direct review, the claim may be raised in habeas only if the [petitioner] can first

---

[8] " . . . [T]he court must deny a motion to vacate a judgment when: . . . (c) [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]"  N.Y. Crim. Proc. Law § 440.10(2)(c).

demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *DiSimone v. Phillips*, 461 F.3d 181 (2d Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Here, petitioner does not argue that he was actually innocent; rather, petitioner argues that the evidence introduced at his trial does not support a depraved indifference murder conviction. (*See* Doc. No. 25 at 61–64.) In citing cases – such as *People v. Hafeez*, 100 N.Y. 253 (2003) that were decided after his trial but before his conviction became final – which are recognized as departures from the traditional standard of depraved indifference law in New York, petitioner implicitly argues that this change in New York law demonstrates cause for failure to preserve his insufficient evidence claim. (*See* Doc. No. 25 at 61–64.) This shift in New York's law on depraved indifference murder constitutes an "objective factor, external to Petitioner's defense [that] interfered with his ability to comply with the state's procedural rule." *Gutierrez v. Smith*, – F.3d –, 2012 WL 6123764, at * 6–7 (2d Cir. 2012) (holding the "fundamental shift in New York's interpretation of its depraved indifference murder statute . . . constitutes appropriate 'cause' for the failure to object").[9] Petitioner also argues that because he was acquitted of intentional murder, there is actual prejudice in this case. (*See* Doc. No. 25 at 68.) Prejudice has been found in similar cases where a trial judge included lesser offenses in his charge and petitioner was acquitted of intentional murder. *See Gutierrez*, 2012 WL 6123764, at *7 (finding the submission of the depraved indifference murder charge worked to petitioner's "actual and substantial disadvantage" because the "difference between a conviction for murder in the second degree and one for manslaughter is substantial"); (*see also* Tr. 823–24). Therefore, the Court

---

[9] Although petitioner's conviction became final prior to the "point of no return" in the evolution of New York's depraved indifference law, *see Epps v. Poole*, 687 F.3d 46, 54 (2d Cir. 2012), the fundamental shift in New York's depraved indifference law began after petitioner's trial but before his conviction became final. *See Gutierrez*, 2012 WL 6123764, at *3–4. Thus, while a "federal habeas corpus court may not apply a 'new rule' within the meaning of *Teague* to upset a state court conviction," the change in New York's depraved indifference law is not a "new rule" within the meaning of *Teague*. *See Hernandez v. Greiner*, 414 F.3d 266, 270 (2d Cir. 2005) (citing *Teague v. Lane*, 489 U.S. 288, 301 (1989)).

finds petitioner has satisfied the cause-and-prejudice exception to the bar on federal habeas review of procedurally defaulted claims and that on the facts of this case, petitioner's claim was preserved.

### B. Insufficiency of the Evidence

Citing *Einaughler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997), petitioner "acknowledges the heavy burden he bears when challenging the legal sufficiency of the evidence from his State Criminal conviction." (Doc. No. 25 at 59.) Indeed, this Court must uphold a state criminal conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Policano v. Herbert*, 507 F.3d 111, 115 (2d Cir. 2007) ("[I]n a challenge to a state criminal conviction . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." (citation omitted)). Where the "record of historical facts [ ] supports conflicting inferences, [the Court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994). Relief on a sufficiency claim cannot be granted unless the record is "so totally devoid of evidentiary support that a due process issue is raised." *Bossett v. Walker*, 41 F3d 825, 800 (2d Cir. 1994) (citation omitted).

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). To be convicted of depraved indifference murder, N.Y.P.L. § 125.25(2) requires that "[u]nder the circumstances evincing a depraved indifference to human

life, [a defendant] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." New York Penal Law § 15.05(3) states:

> A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.

Although petitioner's conviction became final prior to the "point of no return," the law on depraved indifference murder had had begun to change before petitioner's conviction became final. Nonetheless, the holding in *Hafeez* – the only case in the line of cases that began pointing the law of depraved indifference murder in a different direction that was decided prior to petitioner's conviction becoming final – "do[es] not compel the conclusion that a one-on-one stabbing or shooting is always intentional." *Gutierrez*, 2012 WL 6123764, at *8. The attack in *Hafeez*, unlike the attack in this case, was "a quintessential[] intentional attack" where a co-defendant "plotted his revenge for months in advance[,] . . . [schemed] to place the victim in a position where he would be vulnerable attack[,]" and the killer concealed a weapon on his person and then leapt out at the victim, killing him with "a single deliberate wound to the chest that perforated the victim's heart." 100 N.Y.2d at 258. Furthermore, the cases petitioner cites for the proposition that evidence of an intentional shooting cannot support a conviction of depraved indifference murder are inapposite. (*See* Doc. No. 25 at 65–67.) "[I]t has never been permissible in New York for a jury to convict a defendant of depraved indifference murder where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim." *Policano v. Herbert*, 7 N.Y.3d 588, 600 (2006) (citation omitted).

Petitioner argues that "the evidence against [him] demonstrates that the act of murder for which he is convicted was a result of an intentional act toward the victim" rather than a reckless act. (Doc. No. 25 at 63.) Specifically, petitioner contends that "the evidence introduced by the prosecution at trial alleged that the defendant-petitioner had focused his attention on the victim when he allegedly took aim and fired upon him . . . [and that he] had the victim called to the side away from all others" and therefore "it is entirely improbable that the petitioner had conducted himself in a manner that could have been considered indifferent towards other in the vicinity." (Doc. No. 25 at 64.) Here, the jury could very well have considered the fact that petitioner knew the victim and had spoken to him earlier that evening, and that petitioner shot the victim in the back and abdomen while the victim was attempting to flee as intent to disable, threaten, or injure and not to kill. *See People v. Suarez*, 6 N.Y.3d 202, 212–213 (2005) (surveying New York precedents to identify one-on-one murder that might qualify as depraved indifference murder and noting that a defendant in a one-on-one murder may be guilty of depraved indifference murder where he recklessly risked the victim's death without intending to kill); *see also Rivera v. Cuomo*, 664 F.3d 20, 21–22 (2d Cir. 2011) (holding that "although evidence of significantly heighted recklessness was slim, at best," where the defendant shot his ex-wife in the head at point-blank range, "giving the state courts and the jury the utmost deference, [the court] cannot find that the evidence was so completely lacking that no rational jury could have found [the defendant] guilty of depraved indifference murder" as the law stood in 2004 (internal quotation marks and citation omitted)). Moreover, the evidence is sufficient for a jury to have found that petitioner acted recklessly to create a grave risk of death to another person.

Additionally, in further support of his claim, petitioner quotes the prosecutor's opening statement – that the bullets were "not fired indiscriminately" and that "they were shot from a gun

which was intentionally and purposely aimed at a living, breathing twenty-three year old black male as he ran from the direction of that gun" – as support that the shooting was intentional. (Doc. No. 25 at 64 (citing Tr. 386–87).)  However, as the trial court's jury charge makes clear, the prosecution's opening statement was not to be considered as evidence by the jury.  (*See* Tr. 853–54.)  Petitioner has not provided any reason why the jurors at his trial would be unable to follow this instruction of the trial court.  Therefore, the court must presume that jurors followed their instructions and did not consider the prosecutor's opening statement as evidence of intent. *See U.S. v. Castano*, 999 F.2d 615, 618 (2d Cir. 1993) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence . . . unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions . . . ." (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)).

Accordingly, the Court concludes that the evidence in this particular case, when viewed in light most favorable to the prosecution, was sufficient to sustain petitioner's conviction for depraved indifference murder under New York law at the time petitioner's conviction became final.

**IV.    Request For Evidentiary Hearing**

Petitioner also requested that the Court allow him "the opportunity to an [*sic*] evidentiary hearin [*sic*] because [his] issues are worthy of such."  (Doc. No. 43 at 2–3.)  Petitioner's request for an evidentiary hearing lacks merit.

The standard for whether a habeas petitioner may be entitled to an evidentiary hearing is statutorily prescribed by 28 U.S.C. § 2254(e)(2), which states as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A),(B). "In deciding whether to grant a § 2254(e) hearing, a federal court must consider 'whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.'" *Williams v. Schneiderman*, 05-cv-5289, 2012 WL 2411861, at *3 (E.D.N.Y. June 26, 2012) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Petitioner has not pointed to any disputed issues of fact that might affect the disposition of his habeas petition, or any other reason for holding an evidentiary hearing. Indeed, petitioner's motion for an evidentiary hearing merely raised, yet again, his reverse-*Batson* argument, for which all the pertinent facts are contained within the state court record. (*See* Doc. No. 43.) Thus, petitioner's motion for an evidentiary hearing is denied.

## CONCLUSION

Accordingly, it is hereby ORDERED that petitioner's amended habeas corpus petition is DENIED in its entirety, and his petition is DISMISSED. Petitioner's motion for an evidentiary hearing (Doc. No. 43) is also DENIED. The Clerk of Court is directed to dismiss this petition, enter judgment accordingly, and close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      February 28, 2013

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge